UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

WILLIAM JAMES MERENESS,

    Petitioner,

v.                                              Case No. 09-C-76

TIMOTHY LUNDQUIST,

    Respondent.

**DECISION AND ORDER ON PETITION FOR A WRIT OF HABEAS CORPUS**

### I. PROCEDURAL BACKGROUND

On January 16, 2009, the petitioner, William James Mereness ("Mereness"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, in which he challenges the constitutionality of his confinement in the Dodge Correctional Institution. Mereness is in custody as a result of his being sentenced on November 3, 2003, to serve a life term, without the possibility of release to extended supervision, after being convicted of first degree intentional homicide in the Rock County Circuit Court on August 18, 2003. On April 24, 2004, Mereness filed a motion for a new trial. That motion was denied on December 4, 2006. On November 21, 2007, the Wisconsin Court of Appeals affirmed Mereness's conviction and the trial court's denial of his motion for a new trial. On February 21, 2008, the Wisconsin Supreme Court denied Mereness's petition for review. As previously stated, Mereness filed his federal habeas petition on January 16, 2009.

Mereness claims the following in his habeas petition: (1) that the admission at trial of his mother's statements via the testimony of Police Officer Helein violated his Sixth Amendment right to confrontation as well as the Supreme Court's decision in *Crawford v. Washington*, 541 U.S. 36 (2004) and (2) that the Wisconsin Court of Appeals' finding that any Sixth Amendment violation

constituted harmless error was a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

## II. FACTUAL BACKGROUND

Mereness's wife, Jennifer, was murdered on November 22, 2002. Mereness was charged with first degree intentional homicide in connection with the murder. The following is taken from the Wisconsin Court of Appeals' decision affirming Mereness's conviction and sets forth both the relevant facts surrounding the homicide charge and the challenged testimony, as well as the court of appeals' reasons for rejecting the petitioner's *Crawford* argument.

> ¶ 4  Prior to trial, the State filed two motions in limine. In the first, the State sought a ruling on the admissibility of testimony of Officer Peter Helein of the City of Appleton Police Department regarding his conversation with Mereness's mother, LaBelle Mereness, in which she described statements Mereness made to her regarding the homicide. Following a hearing, the circuit court granted the motion and permitted the testimony.
>
> ¶ 5  At trial, Officer Helein testified that he spoke to LaBelle while she was in the hospital prior to her death and that she described two conversations she had with Mereness shortly after his wife's murder. He testified that LaBelle told him that on November 27, 2002, five days after the homicide, her son was at her residence and was extremely upset. At that time he told her that he did not want to go to prison for seventy years for killing Jennifer. The officer also testified that LaBelle described a series of events that occurred two days later on November 2[9], 2002. At that time, according to the officer, LaBelle observed Mereness enter her kitchen and remove a carving knife and a box of saran wrap, and she followed him as he went into the home's bathroom and laid down in the bathtub while still holding these items. The officer testified that LaBelle asked Mereness what he was doing and he responded that he wanted to die. According to the officer, she then asked Mereness, "Did you kill Jennifer[?]" to which he responded by saying "[Y]es, I'm really sorry."
>
> . . . .
>
> ¶ 7 Mereness first argues that the circuit court erred when it denied his motion for a new trial based on the court's admission of the testimony of Officer Helein regarding the conversation with Mereness's mother prior to her death during which she recounted Mereness's confession. He contends that the admission of his mother's statement constituted a violation of his Sixth Amendment confrontation right under *Crawford*, 541 U.S. 36. In *Crawford*, the Supreme Court held that the testimonial statement of a person absent from trial may only be admitted in conformity with the

2

Confrontation Clause of the Sixth Amendment if the declarant is unavailable and the defendant has had a prior opportunity to cross-examine the declarant regarding the statement. *Id*. at 67-68. The determination of a violation of the Confrontation Clause "does not result in automatic reversal, but rather is subject to harmless error analysis." *State v. Weed*, 2003 WI 85, ¶ 28, 263 Wis. 2d 434, 666 N.W.2d 485 (citation omitted). The State concedes a *Crawford* violation, but argues that the error was harmless.

¶8 Whether a constitutional error is harmless is subject to de novo review. *See State v. Rockette*, 2005 WI App 205, ¶ 26, 287 Wis. 2d 257, 704 N.W.2d 382. We are to focus on the effect of the error on the jury's verdict. *Weed*, 263 Wis. 2d 434, ¶ 29. The test is whether it is clear beyond a reasonable doubt that the error complained of contributed to the verdict obtained. *Id*. Stated differently, if it is clear beyond a reasonable doubt that a rational jury would have convicted absent the error, then the error did not "contribute to the verdict" and is therefore harmless. *Id*. The factors to be considered in determining whether an error is harmless include:

> the frequency of the error, the nature of the State's case, the nature of the defense, the importance of the erroneously included or excluded evidence to the prosecution's or defense's case, the presence or absence of evidence corroborating or contradicting the erroneously included or excluded evidence, whether erroneously admitted evidence merely duplicates untainted evidence, and the overall strength of the [State's] case.

*State v. Norman*, 2003 WI 72, ¶ 48, 262 Wis. 2d 506, 664 N.W.2d 97.

¶ 9 Mereness agues, and the State agrees, that the case against him was circumstantial. There were no eyewitnesses to the murder. No one identified Mereness in the vicinity of the crime, and no physical evidence was introduced at trial tying him to the crime or the crime scene. Against this backdrop, Mereness describes the mother's statements as "[p]robably the most damning evidence of guilt . . . ." He asserts that absent evidence of estrangement, a defendant's confession to his own mother makes evidence of a confession much stronger. In response, the State first contends that Mereness's statement to his mother was duplicative of a statement he made in the presence of his father, two days later, which was admitted without objection. Mereness's father[1] testified at Mereness's trial that on November 29, 2002, he and his wife LaBelle had a conversation with Mereness while Mereness was lying in the bathtub of their home:

> Q. We're clarified on the time and date. You and your wife find William in the bathtub with his clothes on or some clothes on with a knife and saran wrap. You, your wife and your son are in the bathroom. Okay?
> A. Yeah.

---

[1] According to the record, the petitioner's father's name is James.

> Q. You stated there was a question asked, "What are you doing?" And you stated that your son did not reply to that?
> A. Right.
> Q. Do you recall that? Is that all correct?
> A. Yes.
> Q. What happened next?
> A. Then my wife asked him the question, "Did you do it?"
> Q. And what did William say?
> A. He replied, "Yeah, I did it." "I done it." "Yeah, I done it."

When Mereness stated in the bathroom that he "did it," his father "interrupted at that point and said [he] didn't want to hear any more . . . . [b]ecause [he] didn't want to have to testify against him." Then, the three went into the kitchen and talked about his options:

> A. We talked about his three options that he had. He stated he didn't want to go to prison. And —
> Q. I'm sorry, sir. Go ahead.
> A. And we talked about three options.
> Q. What were the three options you talked about?
> A. They were to go to trial or confess or take your life.
> Q. And you stated he stated he didn't want to go to jail, was it?
> A. Jail and or prison, yes.
> Q. Was that when you discussed about going to trial or when you, I'm sorry, when you discussed about confessing?
> A. Yes. He had mentioned that.

Mereness argues that without his mother's corroborative statements, there was reasonable doubt as to what Mereness was referring to when his father testified that he said "I done it." We disagree.

¶ 10 Mereness's argument — that it was uncertain what he was admitting to if we look only to his father's testimony — ignores the context surrounding the conversation. Jennifer Mereness was murdered on November 22. The conversation with Mereness's mother occurred on November 27, and the conversation involving his father occurred on November 29.[2] The statement Mereness made in his father's presence occurred while Mereness was lying in the bathtub at his parents' home holding saran wrap and a knife, just as he had been at the time he confessed to his mother. Taken in context, it is readily apparent that the subject of the conversation

---

[2] As the respondent notes in his brief in this court, the court of appeals found that the conversation with LaBelle while Mereness was in the bathtub occurred on November 27, and the one with James (the petitioner's father) occurred on November 29. This would seem to be incorrect. Instead, both Helein and James testified that the incident in the bathtub occurred on November 29. Helein specifically referenced November 29, 2002, in his testimony, and James said the incident occurred the Friday after Thanksgiving, which was November 29, 2002. James also testified that LaBelle was present during the conversation. Thus, it appears that the incidents involving the bathtub described by James and Helein were one and the same.

4

was the death of Mereness's wife and Mereness's options as they related to that subject, which included confessing, going to prison or committing suicide. Mereness does not offer any plausible alternative topic that might have been the subject of the conversation. The postconviction court found that "[t]he jury must have found the father credible. I find him credible. The testimony of James Mereness, Sr., is untainted and, although disjointed, stands on its own. Any statements from LaBelle duplicates this evidence."

¶ 11 The State argues further that the postconviction court specifically determined that the State had presented a strong case. The court stated:

> The State presented many witnesses. Much of the evidence was circumstantial but the enormity of that evidence tied up loose ends and made a tight case. Further, the defendant did attempt to take his life after the conversation he had with his father about his options.
>
> The State's case, although circumstantial, was strong. The State presented evidence that answered or provided strong inferences to answer questions and address gaps in the evidence. The State's Reply Brief sets forth examples of this evidence.
>
> In reviewing the factors I ask the question: Where would the case be without LaBelle's statements? The father's testimony would have been admitted. It is just as damaging, if not more so, as LaBelle's statements. It was credible. The defendant's statements would still come into evidence. The defendant's attempted suicide shows consciousness of guilt. It strengthens the father's testimony as it shows that the defendant acted upon the conversation with his father and serves as an admission. The jury was instructed that it could consider circumstantial evidence. That circumstantial evidence can prove a fact and that a jury may logically find other facts therefrom according to common knowledge and experience. Without LaBelle's statements the State presented credible evidence beyond a reasonable doubt sufficient to sustain the verdict. The totality of the evidence is sufficient to sustain the verdict.
>
> I conclude that the admission of LaBelle's statements through Captain Helein was harmless error.

¶ 12 We conclude that the admitted testimony merely duplicated the untainted evidence offered by Mereness's father. Accordingly, we conclude that admission of the officer's testimony was harmless and that, as a result, Mereness was not entitled to a new trial.

*State v. Mereness*, 2008 WI App 1, ¶¶ 4-12, 306 Wis. 2d 850, 743 N.W.2d 167 (footnote omitted).

5

## III. STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [state] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997); *see also Del Vecchio v. Illinois Dep't of Corrections*, 31 F.3d 1363, 1370 (7th Cir. 1994) (en banc) ("'[F]ederal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law.'") (quoting *Hass v. Abrahamson*, 910 F.2d 384, 389 (7th Cir. 1990)).

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 100 Stat. 1214, which provides, in pertinent part, that the federal courts may not grant habeas relief under Section 2254 unless the state court's judgment

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The relevant state court decision is that of the last state court to address the habeas petitioner's arguments on the merits, *Garth v. Davis*, 470 F.3d 702, 710 (7th Cir. 2006), which in this case is the Court of Appeals for the State of Wisconsin.

"A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (quoting *Hogan v. Hanks*, 97 F.3d 189, 192 (7th Cir. 1996)). A federal habeas court may not rely on its own precedent or that of circuit courts of appeals. There must be Supreme Court precedent to support the petitioner's claim and that Supreme Court precedent must have clearly established the relevant legal principle as of the time of the petitioner's direct appeal. *Schaff v. Snyder*, 190 F.3d 513, 522 (7th Cir. 1999).

A state court decision results in an "unreasonable application" of clearly established federal law when that court either (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000); *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). However, a federal habeas court may not grant relief under the "unreasonable application" prong unless the state court's application of Supreme Court precedent "l[ies] well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002). A state court decision "minimally consistent with the facts and circumstances of the case" is not unreasonable. *Schultz v. Page*, 313 F.3d 1010, 1015 (7th Cir. 2002).

Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

## IV. DISCUSSION

As previously noted, the respondent does not take issue with Mereness's claim that the admission of LaBelle's statements through Officer Henein's testimony violated Mereness's Sixth Amendment confrontation right, as that right was explained in *Crawford*. Thus, the only issue that this court must resolve is whether the Wisconsin Court of Appeals' finding that such violation constituted harmless error was a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

To state the issue in such a seemingly straight-forward fashion is a bit misleading. This is because, according to the Supreme Court, the test to be applied in assessing harmless error is not the

same under all circumstances. The Court has held that, on direct appellate review, a court affirming a harmless error "must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). By contrast, in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993), the Supreme Court said that the harmless error test on collateral review is whether a constitutional error "had a substantial and injurious effect or influence in determining the jury's verdict." 507 U.S. at 637.

Enter the AEDPA, which states that the federal courts may not grant habeas relief under section 2254 unless the state court's judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

So the first issue that must be addressed is what standard this federal habeas court must apply in assessing the state appellate court's finding that the *Crawford* violation constituted harmless error.

The United States Supreme Court and the Court of Appeals for the Seventh Circuit have concluded that the standard identified in § 2254(d)(1) is the appropriate standard of review when reviewing a state court's finding of harmless error. *See Mitchell v. Esparza*, 540 U.S. 12, 124 S. Ct. 7, 157 L. Ed. 2d 263 (2003) (applying section 2254(d)(1) on collateral review of state court's finding that trial counsel's error was harmless); *Ben-Yisrayl v. Davis*, 431 F.3d 1043 (7th Cir. 2005) (applying section 2254(d)(1) on review of state court's finding that prosecutor's statements in closing argument regarding defendant's failure to testify was harmless error); *Aleman v. Sternes*, 320 F.3d 687 (7th Cir. 2003) (applying section 2254(d)(1) on review of sate court's finding that prosecutor's comments to the jury regarding defendant's failure to testify was harmless error).

The Seventh Circuit has instructed that "[w]hen the state court concludes that any error was or would be harmless, that finding is subject to the same standard of review as any other legal conclusion – de novo. . . . That is, we must accept it unless it is contrary to or represents an unreasonable application of clearly established law" under § 2254(d)(1). *Ben-Yisrayl*, 431 F.3d at 1052 (citing *Mitchell*, 540 U.S. at 17-18).

Indeed, if there was any doubt about the standard of review to be applied by a federal habeas court on a state court's finding of harmless error with respect to a constitutional violation, such doubt was put to rest by the Seventh Circuit's decision in *Johnson v. Acevedo*, 572 F.3d 398 (7th Cir. 2009). In *Johnson*, the state court assumed a constitutional error, asked whether the error was harmless, and concluded that it was harmless. On federal habeas review, the district court granted the writ. The Seventh Circuit reversed the district court. In doing so, the Seventh Circuit stated the following:

> If the state court has conducted a harmless-error analysis, the federal court must decide whether that analysis was a reasonable application of the *Chapman* standard. If the answer is yes, then the federal case is over and no collateral relief issues. That's the holding of *Esparza*. If the answer is no – either because the state court never conducted a harmless-error analysis, or because it applied *Chapman* unreasonably – then § 2254(d) drops out of the picture and the federal court must make an independent decision, just as if the state court had never addressed the subject at all. And we know from *Fry* [*v. Pliler*, 551 U.S. 112 (2007)] that, when this is so, a federal court must apply the *Brecht* standard to determine whether the error was harmless. *See also, e.g.*, *Smiley v. Thurmer*, 542 F.3d 574, 583-84 (7th Cir. 2008); *Aleman v. Sternes*, 320 F.3d 687 (7th Cir. 2003).

572 F.3d at 404.

In sum, in evaluating a state appellate court's harmless error determination on collateral review under 28 U.S.C. § 2254(d)(1), the first (and perhaps dispositive) question for this court to resolve is whether the state court unreasonably applied *Chapman* or reached a decision contrary to it. *See Aleman*, 320 F.3d. at 689-90. More precisely, this court's first task is to decide whether the Wisconsin Court of Appeals' finding that the admission of LaBelle's hearsay statement was harmless error

beyond a reasonable doubt constituted an unreasonable application of *Chapman*. If this court determines that it was not an unreasonable application of *Chapman*, then the inquiry on habeas review comes to an end.

And once again, even if this court determines that the Wisconsin Court of Appeals' decision was an unreasonable application of *Chapman*, that does not automatically result in a victory for Mereness. Instead, at that point the court must apply the *Brecht* standard of review. Federal habeas relief is to be denied if the resulting error did not have "a substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 623, 113 S.Ct. 1710; *Aleman*, 320 F.3d at 689-90.

In other words, even if Mereness succeeds in demonstrating that the Wisconsin Court of Appeals unreasonably applied the *Chapman* standard, he must still establish his entitlement to habeas corpus relief under 28 U.S.C. § 2254(a), which provides that the court may issue "a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." As stated by the Seventh Circuit Court of Appeals, "[w]hether a given person's custody violates the Constitution, laws or treaties of the United States depends . . . on whether any error caused the custody. That is where *Brecht's* harmless error doctrine enters." *Aleman*, 320 F.3d at 690.

Having thus set forth the manner in which Mereness's claim is to be reviewed, the court will now turn to the merits of his argument.

As previously stated, on direct appellate review a court affirming a harmless error "must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman,* 386 U.S. at 24. In its decision affirming Mereness's conviction, the Wisconsin Court of Appeals applied the *Chapman* standard, although it did not expressly cite to *Chapman*. The court of appeals stated as follows:

10
Case 2:09-cv-00076-WEC   Filed 11/25/09   Page 10 of 14   Document 23

"Stated differently, if it is clear beyond a reasonable doubt that a rational jury would have convicted absent the error, then the error did not 'contribute to the verdict' and is therefore harmless." The court then proceeded to set forth factors to be considered in determining whether an error is harmless, including "the frequency of the error, the nature of the State's case, the nature of the defense, the importance of the erroneously included or excluded evidence to the prosecution's or defense's case, the presence or absence of evidence corroborating or contradicting the erroneously included or excluded evidence, whether erroneously admitted evidence merely duplicates untainted evidence, and the overall strength of the [State's] case." Such being the case, the Wisconsin Court of Appeals applied the correct standard in assessing whether the *Crawford* violation constituted harmless error. The bottom line issue for this court to resolve is whether the court of appeals' application of *Chapman* to the facts of the case was unreasonable.

In its decision, the Wisconsin Court of Appeals noted that the case against Mereness was circumstantial. There were no eyewitnesses to the murder. No one identified Mereness in the vicinity of the crime, and no physical evidence was introduced at trial tying him to the crime or the crime scene. Yet, Mereness's father testified about the statements Mereness made to him and LaBelle on November, 29, 2002.

> Q. We're clarified on the time and date. You and your wife find William in the bathtub with his clothes on or some clothes on with a knife and saran wrap. You, your wife and your son are in the bathroom. Okay?
> A. Yeah.
> Q. You stated there was a question asked, "What are you doing?" And you stated that your son did not reply to that?
> A. Right.
> Q. Do you recall that? Is that all correct?
> A. Yes.
> Q. What happened next?
> A. Then my wife asked him the question, "Did you do it?"
> Q. And what did William say?
> A. He replied, "Yeah, I did it." "I done it." "Yeah, I done it."

11

When Mereness stated in the bathroom that he "did it," his father "interrupted at that point and said [he] didn't want to hear any more . . . . [b]ecause [he] didn't want to have to testify against him." Then, the three went into the kitchen and talked about his options:

> A. We talked about his three options that he had. He stated he didn't want to go to prison. And —
> Q. I'm sorry, sir. Go ahead.
> A. And we talked about three options.
> Q. What were the three options you talked about?
> A. They were to go to trial or confess or take your life.
> Q. And you stated he stated he didn't want to go to jail, was it?
> A. Jail and or prison, yes.
> Q. Was that when you discussed about going to trial or when you, I'm sorry, when you discussed about confessing?
> A. Yes. He had mentioned that.

Adopting the decision of the trial court, the Wisconsin Court of Appeals found that the testimony of Mereness's father concerning the meaning of what Mereness was talking about was not at all ambiguous. In other words, even without Henein's testimony about LaBelle's more precise description of what Mereness allegedly told her about his killing Jennifer, the jury would have reached the same verdict.

Whether this court would make the same decision as the Wisconsin Court of Appeals is not the question that is presented by Mereness's habeas petition. Instead, the first, and perhaps only, issue that this court must resolve is whether the Wisconsin Court of Appeals' finding beyond a reasonable doubt that the jury would have reached the same verdict even without Henein's testimony regarding LaBelle's statement was unreasonable. *See Johnson*, 572 F.3d at 405 ("Perhaps we would have reached a different conclusion, had we been faced with the harmless-error question in a case on direct appeal in federal court. But whether the state court erred (in the sense that federal judges would have

12
Case 2:09-cv-00076-WEC    Filed 11/25/09    Page 12 of 14    Document 23

decided otherwise) does not matter under § 2254(d). We ask only whether the state court's resolution was reasonable."). Simply stated, I cannot find such decision to be unreasonable.

To be sure, this was not a case in which there was physical evidence tying Mereness to the scene of the crime. But, a jury could not hardly discount the testimony of a father against his own son on a matter as grave as this. Indeed, given the context in which it was made, it would have been reasonably obvious that Mereness's affirmative response to LaBelle's question, "Did you do it[?]" related to the murder of his wife, Jennifer, which had occurred only five days earlier. Mereness's expressing fear of going to jail would make that clear. And if there was any lingering doubt about what Mereness was referring to in his response, such doubt would have disappeared moments later when Mereness discussed with both of his parents his three available options: trial, confession or suicide. These are hardly the normal subjects of a typical Friday-after-Thanksgiving family conversation.

Finally, Mereness apparently attempted to commit suicide that very same day by driving his car into a concrete block retaining wall. That Mereness did so further demonstrates the depth of his desperation and the degree of his consciousness of guilt.

In the end, when all is said and done, the finding of the Wisconsin Court of Appeals on the question of harmless error was not unreasonable. It certainly did not "l[ie] well outside the boundaries of permissible differences of opinion." *Hardaway,* 302 F.3d at 762. Thus, Mereness's petition for a writ of habeas corpus will be denied and this action will be dismissed.

**NOW THEREFORE IT IS ORDERED** that Mereness's petition for a writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IF FURTHER ORDERED** that the Clerk of Court enter judgment accordingly.

**SO ORDERED** this 25th day of November, 2009 at Milwaukee, Wisconsin.

**BY THE COURT:**

s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge
